UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. 1:14-cv-01578-DAD-BAM |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| MARTIN CARRILLO MARTINEZ, | (Doc. No. 43) |
| Defendant. | |

This action arises from the alleged interception and exhibition of a telecast boxing program on October 12, 2013. Plaintiff J & J Sports Productions, Inc. ("J & J Sports") commenced this action against defendant Martin Carrillo Martinez on October 8, 2014, alleging a violation of the Communications Act of 1934 (47 U.S.C. § 605), a violation of the Cable Television Consumer Protection and Competition Act of 1992 (47 U.S.C. § 553), and state law unfair competition and conversion claims.

This matter came before the court on December 20, 2016, for hearing on plaintiff's motion for partial summary judgment. Attorney Thomas Riley appeared on behalf of plaintiff. Defendant Martin Carrillo Martinez appeared on his own behalf with a private Spanish-language interpreter. After oral argument, the motion was taken under submission. For the reasons stated below, plaintiff's motion for partial summary judgment will be granted.

/////

1

# BACKGROUND

Plaintiff J & J Sports is a closed-circuit distributor of sports programming. By contract, plaintiff was granted exclusive commercial exhibition licensing rights to a sports program entitled "Timothy Bradley v. Juan Manuel Marquez WBO Welterweight Championship Fight Program" (the "Program"), telecast on October 12, 2013. (Affidavit of Joseph M. Gagliardi, Doc. No. 43-4 ("Gagliardi Aff.") ¶ 3.) On that date, defendant Martinez was the owner and manager of La Nayarita Restaurant at 702 L Street in Sanger California. (Declaration of Thomas P. Riley, Doc. No. 43-3 ("Riley Decl"), Ex. 1, Req. for Admis. Nos. 29–30.)[1] Defendant intercepted and exhibited the Program at La Nayarita Restaurant without authorization to do so. (Affidavit of Mitch Gerking and Jeff Lang, Doc. No. 43-2 ("Gerking & Lang Aff.") ¶ 1; *see also* Gagliardi Aff. ¶¶ 3, 7–8.)

During the discovery period in this action, plaintiff served on defendant a first request for admissions seeking admissions regarding defendant's ownership of La Nayarita Restaurant and his liability with regard to the Program. (Doc. No. 43 at 6; Riley Decl. ¶ 4, Ex. 1.) Defendant Martinez never responded to this request. (Doc. No. 43 at 6; Riley Decl. ¶ 4.)[2]

Following the close of discovery, plaintiff filed the instant motion for partial summary judgment as to its claim under 47 U.S.C. § 605 and for conversion under state law. (Doc. No. 43.) In response to an order to show cause, defendant Martinez, proceeding *pro se* in this matter, filed a written response in opposition to plaintiff's motion on November 14, 2016. (Doc. No. 49.) On November 21, 2016, plaintiff filed its reply along with objections to defendant's opposition. (Doc. Nos. 50–51.) Thereafter, the parties filed additional briefing regarding the pending motion. (Doc. Nos. 52–53.)

---

[1] Defendant also appears as the primary owner of La Nayarita, according to records kept by the California Department of Alcoholic Beverage Control. A license to sell beer and wine, issued to defendant, was effective on the date the Program was broadcast. *See* http://www.abc.ca.gov/datport/LQSData.asp?ID=48554733 (last visited Nov. 7, 2016) (indicating the license was effective June 9, 2010 through March 3, 2016).

[2] At the hearing on the pending motion, plaintiff's counsel represented that plaintiff timely served other discovery requests on defendant Martinez at his address of record and that no responses thereto were ever received.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Where the party moving for summary judgment will bear the burden of proof at trial, as is the case here, that party must come forward with evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets its initial burden of production, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

**A.     Claim Pursuant to 47 U.S.C. § 605**

Plaintiff J & J Sports moves for summary judgment on its § 605 claim on the basis that defendant Martinez unlawfully intercepted and exhibited the Program at La Nayarita Restaurant. The Federal Communications Act states in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Accordingly, to prevail on a § 605 claim, a plaintiff bears the burden of proving that a defendant (1) intercepted or aided the interception of a radio communication transmitted by the plaintiff; and (2) divulged or published, or aided the divulging or publishing of, the communication. *California Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981)).

/////

4

1. <u>Liability as to Defendant Martinez</u>

On summary judgment, plaintiff presents evidence, including records from the California Department of Alcoholic Beverage Control, that defendant Martinez was the owner and manager of La Nayarita Restaurant when the Program was telecast. Additionally, plaintiff argues that due to defendant's failure to respond to a request for admissions, defendant has admitted he was the owner and manager of La Nayarita Restaurant during the relevant time period. In opposition, defendant Martinez contends only that he was not the owner at the time of the alleged interception and exhibition of the Program on October 12, 2013. Plaintiff attaches to his opposition the same Spanish-language document he included in his response to plaintiff's complaint, which purportedly describes plans to transfer ownership of La Nayarita Restaurant to Mrs. Apolonia Neri before 2013. The translation for this document, submitted by defendant, states the following:

Letter of Transfer

> I, Martin Carrillo, is transferring this business, it's a Restaurant that under my name to Mrs. Apolonia Neri through Mrs. Carmela Carrillo. For this reasons, I agree with this transfer. Mrs. Carmen Carrillo is the owner of the business, it is only under my name which is why any money will be given to Mrs. Carmen Carrillo. In another documents they will establish the requirement of the transfer of the restaurant named "La Nayarita" which is located at 702 L St Sanger, Ca 93657. With the Condition of this transfer already mention, I have nothing to do with this. I also agree that all permits on this property will stay under my name until contract ends and Mrs. Apolonia agrees to pay the permits when it's her turn. I agree with everything mentioned to be valid I agree to go before a Notary and sign this document.

(Doc. No. 17 at 3–5; *see also* Doc. No. 49 at 4–6.) The document is signed, notarized, and dated June 30, 2011. (*Id.*)

Defendant's showing in opposition to plaintiff's motion for summary judgment is insufficient to create a genuine dispute of material fact for several reasons. First, none of defendant's statements regarding ownership of the La Nayarita Restaurant, including the Spanish-language document described above, are sworn statements and cannot be considered evidence. *See* Fed. R. Civ. P. 56(c)(1); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) ("This statement, being unsworn, does not meet the requirements of [former] Rule 56(e).").

Second, to the extent the court may consider defendant's "Letter of Transfer," that document has little legal significance on the issue of ownership of La Nayarita Restaurant.  Defendant Martinez's statements therein only serve to describe his intention to transfer his business to others, but they offer no suggestion that he actually did so.  Thus, because defendant has presented no evidence regarding ownership sufficient to create a genuine dispute, the court finds that no reasonable jury could conclude that defendant was not the owner of La Nayarita Restaurant during the relevant time period.

## 2. Signal Interception and Source

To prove a violation of § 605, plaintiff must demonstrate that there was an "interception" of a radio signal or transmission.  *Seimon*, 767 F.2d at 1366.  First, plaintiff must come forward with evidence as to whether the alleged violation was a radio communication.  Circumstantial evidence may be sufficiently persuasive to support a factual finding in signal piracy cases.  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).  Second, with regard to the "interception" of a radio signal or transmission, willfulness as to a knowing violation of the law is not required to establish liability.  *See J & J Sports Prods., Inc. v. Sandana*, No. 1:13-cv-00842-AWI-JLT, 2014 WL 3689283, at *4 (E.D. Cal. July 23, 2014); *J & J Sports Prods., Inc. v. Delgado*, No. 2:10-cv-02517-WBS, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012).  However, willfulness as to the conduct itself is relevant to determining liability.  *See Sandana*, 2014 WL 3689283, at *4; *J & J Sports Prods. Inc. v. Gidha*, No. CIV–S–10–2509 KJM–KJN, 2011 WL 3439205, at *3 (E.D. Cal. Aug. 4, 2011) (finding defendants could have a meritorious defense where they alleged that they maintained a commercial account, but the cable provider improperly billed them at the residential rate); *J & J Productions, Inc. v. Schmalz*, 745 F. Supp. 2d 844, 851 (S.D. Ohio 2010) (holding defendants were not liable under 47 U.S.C. § 553 where they purchased program from cable provider on commercial account, were billed and paid for such service as commercial customers, but received cable broadcast only authorized for residential customers).

Here, plaintiff has come forward with evidence on summary judgment establishing that defendant intercepted a radio communication carrying the Program on October 12, 2013.

According to their affidavit, plaintiff's investigators visited La Nayarita Restaurant on October 12, 2013 at approximately 7:58 p.m., right before the Program commenced.  (Gerking & Lang Aff.)  They entered the restaurant and saw live public broadcast of the Program on two separate color televisions within the restaurant. (*Id.*)  There were approximately twenty people in the restaurant during the investigators' visit, and they noted that the restaurant did not charge patrons for admission. (*Id.*)  The investigators also submit photographs they took of the restaurant's exterior, showing a satellite dish mounted atop the restaurant. (*Id.*)  In addition, plaintiff points to defendant's failure to respond to plaintiff's request for admissions, as evidence of the following admissions: that defendant Martinez did not order from or pay the licensing fee to plaintiff for the Program; that defendant received satellite service from a programming provider (e.g., DISH Network, DirecTV) for the Program without proper authorization; and that defendant did so by illegal means and for financial gain. (Doc. No. 43 at 6–7.)

Because this circumstantial evidence is sufficient to support a finding that defendant intercepted a radio communication under § 605, and because defendant offers no countervailing evidence on summary judgment, the court finds that no genuine dispute exists as to this element.

### 3. Divulgement or Publication

Finally, the "act of viewing" an unauthorized program constitutes divulgement or publication under § 605. *Seimon*, 767 F.2d at 1366 (citing *Nat'l Subscription Television*, 644 F.2d at 827).  Here, as noted above, there is no dispute that the Program was exhibited on at least two televisions and that at the time of the broadcast, approximately twenty individuals were present in the restaurant.  Accordingly, plaintiff has presented evidence sufficient to satisfy this element of the claim as well and defendant has presented no evidence to the contrary.

Because there is no genuine dispute of material fact as to each element of the § 605 claim, summary judgment in plaintiff's favor is appropriate.

## B. Conversion Claim

The elements of conversion in California are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).  As a

strict liability tort, the knowledge, intent, good faith, and motive of the defendant are immaterial to a conversion claim. *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). For purposes of such a claim, broadcast signals and rights constitute property. *J & J Sports Prods., Inc. v. Bath*, No. 1:11-cv-1564- SAB, 2013 WL 5954892, *8 (E.D. Cal. Nov. 7, 2013); *DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005).

Here, plaintiff's conversion claim is based on the same set of facts described above. Specifically, plaintiff alleges that defendant converted plaintiff's property—i.e., the Program—by wrongful act or disposition of property—i.e., by intercepting, receiving, divulging, and publishing the Program at La Nayarita Restaurant. Because no dispute exists as to each of these elements, summary judgment in favor of plaintiff with respect to its conversion claim is also appropriate.

## CONCLUSION

For the reasons stated above, plaintiff's motion for partial summary judgment (Doc. No. 43) is granted.

IT IS SO ORDERED.

Dated: **January 6, 2017**

_____
UNITED STATES DISTRICT JUDGE