1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   J & J SPORTS PRODUCTIONS, INC.,            No. 1:14-cv-01578-DAD-BAM

12                Plaintiff,

13        v.                                    ORDER GRANTING IN PART PLAINTIFF'S
                                                MOTION FOR DAMAGES, ATTORNEY'S
14   MARTIN CARRILLO MARTINEZ,                  FEES, AND COSTS

15                Defendant.                    (Doc. No. 66)

16

17          This matter came before the court on May 2, 2017, for hearing on plaintiff's motion for

18   damages, attorney's fees, and costs.  Attorney Thomas Riley appeared on behalf of plaintiff.

19   Defendant Martin Carrillo Martinez appeared on his own behalf with a private Spanish-language

20   interpreter.  After oral argument, the motion was taken under submission.  For the reasons stated

21   below, plaintiff's motion will be granted in part.

22                                   **BACKGROUND**

23          Plaintiff J & J Sports Productions, Inc. ("J & J Sports") commenced this action against

24   defendant Martin Carrillo Martinez on October 8, 2014, alleging a violation of the

25   Communications Act of 1934 (47 U.S.C. § 605), a violation of the Cable Television Consumer

26   Protection and Competition Act of 1992 (47 U.S.C. § 553), and state law unfair competition and

27   conversion claims.

28   /////

                                             1

According to its complaint, plaintiff J & J Sports was granted exclusive commercial exhibition licensing rights to a sports program entitled "Timothy Bradley v. Juan Manuel Marquez WBO Welterweight Championship Fight Program" (the "Program"), telecast on October 12, 2013. On that date, defendant Martinez was the owner and manager of La Nayarita Restaurant at 702 L Street in Sanger, California. Defendant intercepted and exhibited the Program at La Nayarita Restaurant without authorization to do so. On January 6, 2017, this court granted plaintiff's motion for partial summary judgment as to plaintiff's § 605 and state conversion claims. (Doc. No. 58.)

On April 3, 2017, plaintiff filed the instant motion for damages, attorney's fees, and costs. (Doc. No. 66.) On April 17, 2017, defendant filed his opposition. (Doc. No. 67.) On April 25, 2017, plaintiff filed its reply. (Doc. No. 68.)

**DISCUSSION**

**A.    Damages**

Following the court's finding of defendant's liability as to plaintiff's § 605 and state conversion claims, plaintiff now seeks damages totaling $26,600.

1.    Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)

Under the Federal Communications Act, a plaintiff may elect to seek either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(I)–(II). The statute provides for statutory damages for each violation of not less than $1,000 and not more than $10,000, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). The statute also authorizes enhanced damages of not more than $100,000 if the court finds the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Here, plaintiff seeks $5,000 in statutory damages and $20,000 in enhanced statutory damages.

With respect to statutory damages, plaintiff seeks nearly three times the $1,600 amount of the commercial licensing fee for the Program. Plaintiff argues that an increased statutory damages amount is warranted not only to compensate it for loss of revenue, but also to deter broadcast piracy in the future. (*See* Doc. No. 66 at 4–5.) Additionally, plaintiff argues that a

large enhanced damages award is justified in light of the number of patrons present for the telecast, the quality of the televisions, and the location of the restaurant. (*Id.* at 7.)[1]

In support of its motion for summary judgment, plaintiff submitted an affidavit from its investigators stating that on the day of the telecast, they observed the Program being shown to approximately twenty patrons on two color televisions at La Nayarita Restaurant. (Affidavit of Mitch Gerking and Jeff Lang, Doc. No. 43-2.) The investigators further stated, however, that there was no cover charge for admittance. (*Id.*) Plaintiff presents no further evidence suggesting that the restaurant specially advertised the event or implemented premium pricing of its services or goods during the event. Moreover, there is no evidence before the court that defendant has previously been found liable of broadcast piracy.

In light of this record, the court finds it appropriate to award plaintiff $1,800 in statutory damages, plus $200 in enhanced statutory damages, for a total of $2,000 in total damages pursuant to 47 U.S.C. § 605(e)(3)(C). *See, e.g.*, *J & J Sports Prods., Inc. v. Hernandez*, No. 12-cv-05773-JST, 2013 WL 2468354, at *5 (N.D. Cal. June 6, 2013) (awarding $2,200 in statutory and enhanced damages); *J & J Sports Prods., Inc. v. Aranda*, No. 1:12-cv-01508-AWI-BAM, 2013 WL 1982974, at *3–4 (E.D. Cal. May 13, 2013) (awarding $1,000 in statutory damages and denying request for enhanced statutory damages); *J & J Sports Prods., Inc. v. Jurado*, No. 2:10-cv-03040-GEB-DAD, 2011 WL 6153605, at *4 (E.D. Cal. Dec. 12, 2011) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for a total award of $4,000 in a default judgment under similar circumstances to those presented here), *findings and recommendations adopted*, No. 2:10-cv-03040-GEB-DAD (Jan. 13, 2012), ECF No. 21.

2.    Damages for Conversion Claim

Plaintiff also seeks an award of $1,600 for its conversion claim. Plaintiff is entitled to such an award. *See, e.g.*, *J & J Sports Prods., Inc. v. Ro*, No. C 09-02860 WHA, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19, 2010) (awarding damages in the amount defendant "would have been required to pay for a proper sublicensing agreement"). In moving for summary judgment,

---

[1] The court notes that plaintiff erroneously associates defendant's restaurant with the city of Fresno, California, despite its location in Sanger, California. (*See id.*)

3

1  plaintiff submitted a declaration by the president of J & J Sports and a rate card for the fight in

2  question, establishing that the defendant would have been required to pay $1,600 for a proper

3  sublicensing agreement.  (Affidavit of Joseph M. Gagliardi, Doc. No. 43-4.)  Accordingly, the

4  court will award plaintiff $1,600 in damages with respect to its conversion claim.

5  **B.    Attorney's Fees**

6      Plaintiff requests an award of $10,195.00 in attorney's fees, covering fees incurred by

7  three individuals: Attorney Thomas P. Riley, a research attorney, and an administrative assistant.

8  (*See* Declaration of Thomas P. Riley ("Riley Decl."), Doc. No. 66-1, Ex. 1.)

9      Reasonable attorney's fees are recoverable under 47 U.S.C. § 605(e)(3)(B)(iii).  The court

10  determines the amount of reasonable attorney's fees by applying the "lodestar" method.  *Ferland*

11  *v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  The lodestar is calculated by

12  multiplying the number of hours the prevailing party reasonably expended on the litigation by a

13  reasonable hourly rate.  *Id.*  "In determining reasonable hours, counsel bears the burden of

14  submitting detailed time records justifying the hours claimed to have been expended."  *Chalmers*

15  *v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  "Where the documentation of hours

16  is inadequate, the district court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461

17  U.S. 424, 433 (1983).  A district court should also exclude from the lodestar fee calculation any

18  hours that were not "reasonably expended," such as hours that are excessive, redundant, or

19  otherwise unnecessary.  *See id.* at 434; *see also J & J Sports Prods., Inc. v. Napuri*, No. C 10-

20  04171 SBA, 2013 WL 4428573, at *1 (N.D. Cal. Aug. 15, 2013).

21          1.    Prevailing Market Rate for Attorneys in the Eastern District of California

22      The district court must first determine a reasonable hourly rate, considering the

23  experience, skill, and reputation of each attorney requesting fees.  *Chalmers*, 796 F.2d at 1210.

24  Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant

25  community," with a special emphasis on fees charged by lawyers of "comparable skill,

26  experience, and reputation."  *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir.

27  1992), *vacated on other grounds by* 984 F.2d 345 (9th Cir. 1993).  Generally, the forum district

28  represents the relevant legal community.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

1   1992); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (determining

2   that "generally, the relevant community [for the prevailing market rate] is the forum in which the

3   district court sits"); *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 n.5 (9th Cir. 2000)

4   (finding the same), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir.

5   2012).

6       The fee applicant bears the burden of producing satisfactory evidence "that the requested

7   rates are in line with those prevailing in the community for similar services by lawyers of

8   reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895

9   n.11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees

10  in the community, and rate determinations in other cases, particularly those setting a rate for the

11  plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United*

12  *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Napuri*,

13  2013 WL 4428573, at *2.

14      With regard to plaintiff's lead counsel, attorney Riley, plaintiff references "specific

15  authority involving Plaintiff's counsel in this district" to support a rate of $350.00 per hour. (*See*

16  Doc. No. 66 at 11.) This court finds that $350.00 is a reasonable hourly rate within the Fresno

17  Division of the Eastern District of California as to attorney Riley. *See, e.g., J & J Sports Prods.,*

18  *Inc. v. Barajas*, No. 1:15-cv-01354-DAD-JLT, 2017 WL 469343, at *2 (E.D. Cal. Feb. 2, 2017)

19  (concluding that $350.00 is a reasonable hourly rate for attorney Riley); *Joe Hand Promotions,*

20  *Inc. v. Garcia*, No. 1:12-cv-01744-LJO, 2013 WL 238369, at *3 (E.D. Cal. May 30, 2013), *report*

21  *and recommendations adopted*, No. 1:12-CV-0174-LJO-JLT, 2013 WL 2991048 (E.D. Cal. June

22  14, 2013) ("Previously this court has determined that $350 is a reasonable hourly rate for '(very)

23  experienced and skilled trial counsel' within the Fresno Division of the Eastern District." (citing

24  *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1132 (E.D. Cal. 2011)).

25      Plaintiff additionally seeks attorney's fees based on an hourly rate of $210.00 for

26  plaintiff's research attorney. (*See* Doc. No. 66 at 11.) While plaintiff provides no authority for

27  the requested rate in comparable cases, this court finds that such a rate is reasonable, as compared

28  to attorney Riley's rate, in the Fresno Division of the Eastern District of California. Accordingly,

plaintiff will be awarded attorney's fees based on a rate of $210.00 per hour for its research attorney.

### 2. Fees for the Administrative Assistant

While plaintiff acknowledges that the award of attorney's fees for the services rendered by administrative assistants have been denied in some Eastern District cases, plaintiff asks the court to award such fees here, distinguishing that the tasks assigned to the administrative assistant in this case were not clerical in nature "but more akin to paralegal type tasks" in order to keep actual attorney's fees down. (Doc. No. 66 at 11.) Accordingly, plaintiff asks the court to award $75.00 per hour for work performed by administrative assistants if the court is not inclined to grant the $100.00 fee originally requested by plaintiff. (*Id.*)

The court declines to part from the decisions of other judges in the Eastern District concerning the award of fees for time expended by administrative assistants because the court finds that the distinction plaintiff provides between clerical and paralegal type tasks is illusory. At the outset, plaintiff correctly notes that "filing, transcript, and document organization time [are] clerical in nature and should [be] subsumed in firm overhead rather than billed at paralegal rates." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Turning to the actual request, time entries submitted in support of plaintiff's motion in this regard can be divided into three categories: (1) entries presented in block format; (2) duplicative entries; and (3) entries solely related to the preparation of documents.

With respect to the first category, it has been noted that records which bundle several tasks together in a single block of time make it extremely difficult to assess the reasonableness of the hours expended. *J & J Sports Prods., Inc. v. Corona*, No. 1:12-cv-01844-LJO, 2014 WL 1513426, at *2 (E.D. Cal. Apr. 16, 2014) (citing *Aranda v. Astrue*, No. CV. 08-340-MA., 2011 WL 2413996, at *5 (D. Ore. June 8, 2011)), *findings and recommendation adopted*, No. 1:12-cv-01844-AWI, 2014 WL 1767691 (E.D. Cal. May 2, 2014); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities.") Here, plaintiff submits several entries in block format where it is difficult for the court to determine the amount of time the administrative

assistant allegedly spent on the preparation of documents compared to time expended filing and serving the documents. (Riley Decl., Ex. 1 at 1–11.)

As to the second category, duplicative entries, courts specifically have expressed concern that plaintiff's attorney and the administrative assistants working with him "completed several duplicative tasks" and recommended that fees not be awarded for such time attributed to such tasks:

> For example, on February 5, 2012, both the administrative assistant and Mr. Riley spent 0.15 hour on "Initial File Review and File Preparation." (Doc. 27 at 5). On March 15, 2012, the administrative assistant conducted "Public Records Research and Review of Defendant Klarke Anthony Garl" for 0.15 hour. *Id.* Mr. Riley seeks 0.15 hour for the same task, on the same day. *Id.* Further, the time records indicate both Mr. Riley and the administrative assistant spent 0.10 hour on October 5, 2013 in "Review of Notice Filed by Defendant Klarke Anthony Garl" and 0.10 hour on July 24, 2013 for "Review of Judgment against Defendant Klarke Anthony Garl." *Id.* at 6–7.

*Joe Hand Promotions, Inc. v. Garl*, No. 1:12-cv-00672-LJO, 2013 WL 4736826, at *2 (E.D. Cal. Sept. 3, 2013), *findings and recommendation adopted*, No. 1:12-CV-00672-LJO, 2013 WL 5279000 (E.D. Cal. Sept. 18, 2013). Likewise here, plaintiff has submitted records reflecting tasks of an identical nature that are apparently claimed to have been completed by both the attorney and the administrative assistant. For example, both spent 0.15 hours on "Review of Defendant's Letter in response to Initial Demand Letter" on January 3, 2014. (Riley Decl., Ex. 1 at 1.) Both conducted a "Public Records Research and Review re: Defendant Martin Carillo Martinez" for 0.15 hours on January 20, 2015. (*Id.* at 2.) These examples are not exhaustive, as both also reviewed the court's orders on the same day and entered the same amount of time spent in several of the other entries in the records submitted to the court. (*See id.* at 1–11.)

There are also a few entries in the records submitted in support of the pending motion that fall into the third category involving the preparation of documents. These include, for example, the "Preparation of Plaintiff's Ex-Parte Application" for 0.50 hours on February 13, 2017. (*Id.* at 10.) Based on these entries, it is unclear to what extent this preparation involved actual substantive work as opposed to merely the organizing of documents and the latter is clearly to be subsumed in overhead costs. *See Nadarajah*, 569 F.3d at 921. While this court court has the

discretion to reduce hours billed in block format, *see Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000), it sees no reason to part from the rulings of other judges of this court "[g]iven the lack of specificity and the clerical and duplicative nature of the tasks . . . ." *Corona*, 2014 WL 1513426, at *2. Therefore, plaintiff's request for the award of fees for the time of administrative assistants expended in this case is denied in its entirety.

## C. Costs

Finally, plaintiff seeks costs in the amount of $1,228.70, consisting of (1) $400.00 for the complaint filing fee, (2) $165.00 for service of process charges, (3) $650.00 for investigative expenses, and (4) $13.70 for telephone charges. 47 U.S.C. § 605(e)(3)(B)(iii) requires that the court award "full costs . . . to an aggrieved party who prevails." The court determines that an award of costs in the amount of $578.70, for the filing fee, service of process, and telephone charges are appropriate.

The remaining issue is whether an award of costs for investigative expenses is warranted. Courts have refused to award such pre-filing investigative fees to the prevailing party. *See, e.g., Napuri*, 2013 WL 4428573, at *3; *Joe Hand Promotions, Inc. v. Piacente*, No. C-10-3429 CW (JCS), 2011 WL 2111467, at *9 (N.D. Cal. Apr. 11, 2011). Plaintiff contends that there is a split of authority with respect to the recovery of investigative costs. (Doc. No. 66 at 12–13.) While the court recognizes that investigative costs have been awarded to the prevailing party in some of the cases cited by plaintiff, those decisions do not address the issue or explain why the award of such costs was appropriate. *See, e.g., J & J Sports Prods., Inc. v. Pagliaro*, 2014 WL 7140605, No. 1:12-cv-01507-LJO-SAB, at *2 (E.D. Cal. Dec. 12, 2014) (noting only that "[p]laintiff spent $601.00 on 'Investigative Expenses,'" and awarding such costs without explaining why). Plaintiff asks the court to take judicial notice of a decision in *J & J Sports Prods., Inc. v. Bandera Cowboy Bar, LLC*, No. 5:15-cv-00352-DAE (W.D. Tex. June 3, 2016), where a district court awarded investigative costs based on counsel's affidavit attesting that the investigator's fee was reasonable. (Riley Decl. ¶ 10, Ex. 5.) Plaintiff's counsel submits a declaration containing the same attestation as to the reasonableness of the investigation fees here. (Riley Decl. ¶ 8 ("Based on my experience in handling anti-piracy cases, it is my opinion that the fee of $650.00 for

8

auditor's investigation in this case is a reasonable fee.").)

The court is not persuaded and finds the analysis set forth in *Joe Hand Promotions, Inc. v. Albright,* No. 2:11-cv-02260-WBS, 2013 WL 4094403 (E.D. Cal. Aug. 13, 2013), to be instructive. There, the court found that even if the investigative costs were recoverable, they were insufficiently documented because plaintiff only included a bare invoice and "no additional information regarding the qualifications of the investigation company or what services it provided, leaving the court with no means of determining if the charge is reasonable." *Id.* at *6. Other jurisdictions have followed a similar approach. *See, e.g.*, *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006) ("Thus a plaintiff must document '(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate.'" (internal quotations omitted)). Here, plaintiff has submitted only an invoice and no other documentation regarding the qualifications of its investigator or an explanation of what services were provided. (*See* Riley Decl., Ex. 2.) Accordingly, the court declines to award the requested investigative costs.

## CONCLUSION

Consistent with the reasoning set forth above,

1. Plaintiff's motion for damages, attorney's fees, and costs (Doc. No. 66) is granted in part;

2. The court awards $3,600.00 to plaintiff in total damages;

3. The court awards $7,805.00 to plaintiff in attorney's fees;

4. The court awards $578.70 to plaintiff in costs; and

5. Within fourteen days of the date of this order, plaintiff shall file a status report regarding plaintiff's intention to proceed with its remaining claims under 47 U.S.C. § 553 and California's unfair competition laws. Failure to comply with this order may result in dismissal of those claims.

IT IS SO ORDERED.

Dated:  __May 10, 2017__                          _____

UNITED STATES DISTRICT JUDGE

9